# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                                              |         |                              |
|----------------------------------------------|---------|------------------------------|
| DANNY F. JONES,                              | *       |                              |
|   Plaintiff,                                 | *       |                              |
|   v.                                         | *       | Civil Action No. PX 16-2563  |
| WEXFORD HEALTH SOURCES, INC., et al.,        | *       |                              |
|   Defendants.                                | ******  |                              |
| DANNY F. JONES,                              | *       |                              |
|   Plaintiff,                                 | *       |                              |
|   v.                                         | *       | Civil Action No. PX 16-2564  |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, et al., et al., | *       |                              |
|   Defendants.                                | ******  |                              |

## MEMORANDUM OPINION

Pending is a motion to dismiss, or alternatively, for summary judgment filed by Defendants Wexford Health Sources, Inc., ("Wexford"), Colin Ottey, M.D., Robustianno Barrera, M.D., Carla Buck, R.N., Beverly McLaughlin, R.N.P., and Dennis Martin, R.N.[1] ("Medical Defendants"). Civil Action No. PX-16-2563, ECF No. 18.[2] Plaintiff Danny F. Jones

---

[1] The Clerk shall amend the docket to reflect the correct names of all defendants.

[2] Counsel has not accepted service on behalf of Dr. Roy J. Carls or Sgt. Femi. Thus, Jones' complaint against Dr. Carls and Sgt. Femi shall be dismissed without prejudice.

1

has filed responses in opposition. *Id.*, ECF No. 27; ECF No. 28.[3] Also pending in the related action is a motion to dismiss, or alternatively, for summary judgment filed by Defendants Department of Public Safety and Correctional Services, Warden Richard J. Graham, Jr., Lt. Curran McKenzie and Sgt. Wayne Purnell. ("Correctional Defendants"). Civil Action No. PX-16-2564, ECF No. 13.[4] Plaintiff has filed a response in opposition (*id.*, ECF No. 19)[5], to which Correctional Defendants have replied. *Id.*, ECF 20.

Because both cases concern essentially the same set of facts and legal issues, consolidation for dispositive review is appropriate. *See* Fed. R. Civ. P. 42(a). Upon review of the pleadings, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' dispositive motions are granted.

## I. BACKGROUND

Plaintiff Danny F. Jones ("Jones") is an inmate currently confined at Eastern Correctional Institution ("ECI") in Westover, Maryland. On July 13, 2016, Jones filed two complaints: the first against Medical Defendants, Civil Action No. PX 16-2563, ECF No. 1, and the second against Correctional Defendants, Civil Action No. PX-16-2564, ECF No. 1. At the heart of both complaints is Plaintiff's claimed violation of his Eighth Amendment right, as pleaded through 42 U.S.C. § 1983, to be free from cruel and unusual punishment stemming from Defendants' provision of inadequate medical care.

---

[3] Citations are to the court's electronic docket.

[4] Counsel has not accepted service on behalf of Dr. Roy J. Carls. Jones' complaint against Dr. Carls shall be dismissed without prejudice.

[5] In his response, Jones alleges, for the first time, claims under the Americans with Disabilities Act. ECF 19. These claims are not properly before the court and will not be considered.

The following facts are undisputed and construed in the light most favorable to Jones. While housed at Western Correctional Institution ("WCI"), Jones fell on February 27, 2014 while being escorted by certain of the Correctional Defendants. Civil Action No. PX-16-2564, ECF No. 13-1; ECF No. 1 at 3. Jones specifically contends that he "lost [his] footing and fell backwards, handcuffed behind [his] back down the steps, which caused further injury to [his] body." *Id*. Jones was directed to stay on the floor until medical personnel arrived. ECF No. 1 at 4. While Jones lay on the floor, Carla Buck, R.N. ("Nurse Buck") responded to the incident and ordered that Jones be transported to the infirmary with assistance because he could not walk. Civil Action No. PX-16-2563, ECF No. 5 at 3.

On February 27, 2014, Jones was moved from his housing unit to the infirmary at Western Correctional Institution ("WCI") for further examination by Beverly McLaughlin, R.N.P. ("McLaughlin"). *Id.* at 4. McLaughlin noted swelling and weakness in Jones' lower extremities and "severe pain with motion." *Id.* McLaughlin ordered 200 mg of Motrin every eight hours as well as 325 mg of Tylenol. *Id.* Jones was also prescribed Keflex and given a medical assignment to a bottom tier and bottom bunk. *Id.* X-rays were also ordered. *Id.* Jones was not provided a cane or crutches. *Id.*

On March 3, 2014, Jones was escorted by Sergeant Femi to the infirmary for x-rays. Civil Action No. PX-16-2564, ECF No. 1 at 4. Although Jones asked Femi for a wheelchair, Femi could not accommodate the request because no medical order for a wheelchair had issued. *Id*. Jones claims, however, that after the x-rays, Femi attempted to transport Jones in a "gator cart," but when Jones tried to get into the cart, his right knee gave out and he fell. *Id*. Femi directed two inmates to assist in picking Jones up and placing him in the cart so that he could be taken to

3

the infirmary for further treatment. *Id*. While walking to the medical unit, handcuffed, his right knee collapsed and he fell once again. *Id.*

After the March 3rd fall, Jones was evaluated by Dennis Martin, R.N. ("Nurse Martin"). Civil Action No. PX-16-2563, ECF No. 5 at 4. According to Jones, Nurse Martin also failed to order crutches or provide a cane to him. *Id.* Additionally, Nurse Martin failed to call the provider, Doctor Colin Ottey, M.D. ("Dr. Ottey"), as Jones requested. *Id.* Jones states he was not provided any additional pain medication relative to this second fall. *Id.*

On April 12, 2014, Jones saw Nurse Buck because his right knee remained swollen and inflamed. Civil Action No. PX-16-2563, ECF No. 5 at 4. Jones states that Nurse Buck examined him and noted that his knee was swollen and that he was limping; however, she did not provide him with a cane, crutches or stronger pain medication.

Thereafter, Jones was provided the following care related to his knee injury. On April 28, 2014, Dr. Robustianno Barrera, M.D., ("Dr. Barrera") prescribed 50 mg of Tramadol for pain and ordered an MRI, but did not provide any assistive devices such as a cane or crutches. *Id.* On May 2, 2014, Dr. Roy Carls ("Dr. Carls") at the WCI infirmary recommended that Jones be given a knee brace and ordered an MRI. ECF No. 5 at 5. Dr. Carls also preliminarily diagnosed Jones with a right knee medial meniscus tear. *Id*. Jones submitted a grievance to the Warden on June 4, 2014 and only thereafter was provided a knee brace. *Id.* On July 31, 2014, Jones was again evaluated by Dr. Ottey at WCI. Jones advised that the knee brace did not help and once again urged that he be given either crutches or a cane. Dr. Ottey responded that once Jones received an MRI, he "would let [him] know" about the cane or crutches. *Id.* On August 15,

2014,[6] Jones underwent an MRI which revealed a right knee quadriceps tear. In September 2015, Jones was transferred to the North Branch Correctional Institution ("NBCI") where he was provided a cane. *Id.* Dr. Carls performed surgery on Jones' knee on February 2, 2015, which Jones admits relieved his pain. *Id.*

## II. ANALYSIS

### A. Plaintiff's Motions to Amend & File a Surreply

Jones has moved to amend his complaint so that he may sue the Correctional Defendants in their individual capacities. Civil Action No. PX-16-2564, ECF No. 18. The motion, unopposed by the Correctional Defendants, *see* ECF No. 20, at 3 n.2, shall be granted.

Jones also moves for leave to file a surreply. *Id.*, ECF No. 24. The Correctional Defendants' dispositive motion was filed on November 28, 2016. *Id.*, ECF No. 13. Jones filed his response on December 30, 2016. *Id.*, ECF No. 19. Correctional Defendants replied on January 5, 2017. *Id.*, ECF No. 20. On January 19, 2017, Jones's surreply was returned to him with notice that leave of court was required before filing a surreply. *Id.*, ECF No. 21. Jones filed his Motion for Leave to File a Surreply on March 8, 2017. *Id.*, ECF No. 24. In it, Jones does not explain why he wishes to file a surreply. Without any basis for granting the motion, and the matter having been fully briefed, the Motion shall be denied.

### B. Defendants' Dispositive Motions

#### 1. Standard of Review

Defendants style their motions as ones to "Dismiss or, in the Alternative, Motion for Summary Judgment" and attach exhibits for the Court's consideration. Before the Court treats a

---

[6] Jones' Amended Complaint mistakenly identifies the date of his MRI as August 15, 2016. *See* ECF No. 5 at 5.

5

motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The non-moving party may object to the court construing the motion as one for summary judgment by attesting, via affidavit or declaration, to the need to take additional discovery before resolving the motion. Fed. R. Civ. P. 56(d); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). The Defendants' pleadings have given Jones reasonable notice and opportunity to respond the propriety of summary judgment, *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998), and Jones has not submitted an affidavit attesting to the need for additional discovery. In fact, Jones has attached exhibits of his own to his responses. Thus, the Court will treat the motions as ones for summary judgment and consider the additional documentary evidence submitted by Jones and the Defendants.

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Conversely, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

**2. Defendants Wexford, Graham, and McKenzie**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no

respondeat superior liability in a *Bivens* suit). Liability of supervisory officials is not based on ordinary principles of respondeat superior, but rather is premised on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

With regard to Wexford Health Services, Warden Graham, and Lt. McKenzie, Jones has failed to plead sufficient facts that "supervisory indifference" or "tacit authorization" of misconduct resulted in Jones' injuries. Rather, Jones at best has pleaded liability based on respondeat superior which is simply unavailable in the § 1983 context. Accordingly, claims made as to Wexford, Graham, and McKenzie must be dismissed.

**3. Defendant Department of Public Safety and Correctional Services**

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state absent certain narrowly circumscribed exceptions not applicable here. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. The Department of Public Safety and Correctional Services, a State agency, is immune from federal suit and is thus dismissed from this action.

**4. Medical Defendants**

As to Jones' claims regarding insufficient medical attention, the Eighth Amendment to the United States Constitution governs the analysis. The Eighth Amendment prohibits

7

"unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To sustain a claim for denial of medical care under the Eighth Amendment, Jones must show that the Medical Defendants' acted with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Importantly, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). This is so because the Constitution "is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Id.* at 695–96.

The deliberate indifference standard regarding a serious medical need requires that Jones demonstrate that objectively he was suffering from a serious medical need, and that, subjectively, the prison staff were aware of that need but failed to either provide treat Jones or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Jones must also demonstrate that the Medical Defendants behaved with "subjective recklessness" in the face of his serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a

8

risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Put differently, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) ("[A] court must focus on the precautionary actions actually undertaken by an official in response to a risk . . . not those actions which could have been taken"). For Jones to prevail, the treatment rendered "must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence or malpractice does not rise to the level of a constitutional violation. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)). "The right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply

that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (emphasis added).

Here, the evidence viewed in the light most favorable to Jones establishes that he received constitutionally adequate medical care for his knee injury. Indeed, Jones attended regular medical appointments with qualified staff who provided ongoing attention to his pain management, physical therapy, and assistive devices related to his knee injury. When all other less invasive treatments were exhausted, Jones received the appropriate surgery and related medical care. Medical Defendants are therefore entitled to summary judgment.

In Jones' view, his claims survive because he was not provided a cane or crutches in a timely manner. Jones' argument amounts to little more than disagreement with the course of treatment provided. When viewing the evidence as a whole and in the light most favorably to Jones, no evidence exists that the delay in treatment amounts to deliberate indifference. *See Estelle*, 429 U.S. at 105–06 (holding that an inadvertent failure to provide adequate medical care does not amount to deliberate indifference). Indeed, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)).

No exceptional circumstances exist here. Construing all evidence most favorably to Jones, the medical Defendants have articulated sound reasons for their course of treatment. Dr. Barrera has affirmed (and Jones provides no evidence to the contrary) that assistive devices such as a cane or crutches can impede maximum functional improvement and limit the full range of motion, and so would be an inappropriate first course of treatment for Jones. *See* Civil Action

10

No. PX-16-2563, ECF No. 18-5 at 7. Similarly, Dr. Carls agreed with Dr. Barrera and did not recommend a cane or crutches. *Id.* at 11. Neither did the physical therapists. *See* ECF No. 18-4 at 44. It was only after Jones's condition was monitored regularly, and physical therapy proved ineffective, that an MRI was approved and Jones' quadriceps tear was confirmed. In addition to appropriate follow-up consultation with Dr. Carls and preparation for surgery, Jones received a cane at that juncture. ECF No. 18-5 at 6**,** ECF No. 18-4 at 95.

Similarly, even if the Medical Defendants should have given Jones an MRI earlier so as to confirm surgery was warranted, that alone does not rise to the level of deliberate indifference. This is especially apparent here because, as Dr. Barrera noted, meniscus tears do often heal without surgery when treated properly. ECF No. 18-5 at 12. In this regard, no evidence exists that the providers' course of treatment was so outrageously deficient that it amounts to deliberate indifference. ECF No. 18-5 at 12.

To the extent Jones claims that Nurses Buck and Martin failed to order additional pain medication, Dr. Barrera avers that the medications prescribed to Jones were appropriate to treat his condition. ECF No. 18-5 at 5–7. Jones has provided no evidence to the contrary. Finally, the medical records demonstrate that Jones was consistently provided analgesic medication which his care providers increased and adjusted in response to his complaints regarding pain management. Even when viewed in the light most favorably to Jones, no evidence exists that defendants were deliberately indifferent in managing Jones's pain through medication.

Lastly, Jones' general complaint regarding the timeliness of his medical care is unavailing. While it took approximately one year for Jones to undergo surgery for a torn meniscus, he was treated regularly by medical staff in a conservative manner, which included

appropriate diagnostic tests, analgesic medication, and physical therapy prior to surgery. Although Jones' frustration with the delay in receiving surgery is understandable, it does not rise to the level of a constitutional violation. Medical Defendants' motion for summary judgment is therefore granted.

### 5. Correctional Defendants

To sustain an Eighth Amendment claim against state actors who are not medical providers such as Correctional Defendants, Jones must demonstrate (1) that the Correctional Defendants actual knew of the risk of harm to Jones, *Young v. Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer should have recognized it."); and (2) that the Correctional Defendants "recognized that [their] actions were insufficient" to mitigate the risk of harm to the inmate arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Here, no evidence exists that any of the named Correctional Defendants knew that their failure to provide assistive devices or other physical support during their escort would risk harm to Jones. Prior to Jones falling, the Correctional Defendants had no direct involvement in Jones's medical care or the provision of medical equipment. Moreover, that Jones may have discussed his difficulty walking did not alter the fact that the Correctional Defendants were not given any medical directives to provide Jones any assistive devices. Accordingly, no evidence supports that the Correctional Defendants were either aware of a known risk of harm to Jones or recognized that their actions were insufficient to mitigate the risk of harm. Correctional Defendants are therefore entitled to summary judgment in their favor on the Eighth Amendment claims.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is granted, and his motion to file a surreply is denied. Plaintiff's claims against defendants Dr. Roy J. Carls and Sgt. Femi are dismissed without prejudice. Defendants' motions to dismiss, or in the alternative, for summary judgment are granted. A separate order will follow.


8/18/2017                                             /S/
Date                                                    Paula Xinis
                                                          United States District Judge